(Slip Opinion) OCTOBER TERM, 2018 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## AIR & LIQUID SYSTEMS CORP. ET AL. *v.* DEVRIES, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DEVRIES, DECEASED, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 17–1104. Argued October 10, 2018—Decided March 19, 2019

Petitioners produced equipment for three Navy ships. The equipment required asbestos insulation or asbestos parts to function as intended, but the manufacturers did not always incorporate the asbestos into their products. Instead, the manufacturers delivered much of the equipment to the Navy without asbestos, and the Navy later added the asbestos to the equipment. Two Navy veterans, Kenneth McAfee and John DeVries, were exposed to asbestos on the ships and developed cancer. They and their wives sued the manufacturers, alleging that the asbestos exposure caused the cancer and contending that the manufacturers were negligent in failing to warn about the dangers of asbestos in the integrated products. Raising the "bare-metal defense," the manufacturers argued that they should not be liable for harms caused by later-added third-party parts. The District Court granted summary judgment to the manufacturers, but the Third Circuit, adopting a foreseeability approach, vacated and remanded.

*Held*: In the maritime tort context, a product manufacturer has a duty to warn when its product requires incorporation of a part, the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and the manufacturer has no reason to believe that the product's users will realize that danger. Pp. 4–11.

(a) Tort law imposes a duty to exercise reasonable care on those whose conduct presents a risk of harm to others. That includes a duty to warn when the manufacturer "knows or has reason to know" that its product "is or is likely to be dangerous for the use for which it

is supplied" and "has no reason to believe" that the product's users will realize that danger. 2 Restatement (Second) of Torts §388. Three approaches have emerged on how to apply that "duty to warn" principle when a manufacturer's product requires later incorporation of a dangerous part in order for the integrated product to function as intended. The first—the foreseeability rule—provides that a manufacturer may be liable when it was foreseeable that its product would be used with another product or part, even if the manufacturer's product did not require use or incorporation of that other product or part. The second—the bare-metal defense—provides that if a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product—even if the product required incorporation of the part and the manufacturer knew that the integrated product was likely to be dangerous for its intended uses. A third approach, falling between those two, imposes on the manufacturer a duty to warn when its product requires incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses.

The third approach is most appropriate for this maritime context. The foreseeability rule would sweep too broadly, imposing a difficult and costly burden on manufacturers, while simultaneously overwarning users. The bare-metal defense ultimately goes too far in the other direction. After all, a manufacturer that supplies a product that is dangerous in and of itself and a manufacturer that supplies a product that requires incorporation of a part that the manufacturer knows or has reason to know is likely to make the integrated product dangerous for its intended uses both "kno[w] or ha[ve] reason to know" that the product "is or is likely to be dangerous for the use for which it is supplied." And in the latter case, the product manufacturer will often be in a better position than the parts manufacturer to warn of the danger, because the product manufacturer knows the nature of the ultimate integrated product. Requiring a warning in these circumstances will not impose a significant burden on manufacturers, who already have a duty to warn of the dangers of their own products. Nor will it result in substantial uncertainty about when product manufacturers must provide warnings, because the rule requires a manufacturer to warn only when its product *requires* a part in order for the integrated product to function as intended. And this Court is unaware of any substantial overwarning problems in those jurisdictions that have adopted the approach taken here. Requiring the product manufacturer to warn when its product requires incorporation of a part that makes the integrated product dangerous for its intended uses is especially appropriate in the context of maritime law,

Syllabus

which has always recognized a "'special solicitude for the welfare'" of sailors. *American Export Lines, Inc.* v. *Alvez*, 446 U. S. 274, 285. Pp. 4–10.

(b) The maritime tort rule adopted here encompasses all of the following circumstances, so long as the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and the manufacturer has no reason to believe that the product's users will realize that danger: (i) a manufacturer directs that the part be incorporated; (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part; or (iii) a product would be useless without the part. P. 10.

873 F. 3d 232, affirmed.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. GORSUCH, J., filed a dissenting opinion, in which THOMAS and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–1104

_____

## AIR AND LIQUID SYSTEMS CORP., ET AL., PETITIONERS *v.* ROBERTA G. DEVRIES, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JOHN B. DEVRIES, DECEASED, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[March 19, 2019]

JUSTICE KAVANAUGH delivered the opinion of the Court.

In maritime tort cases, we act as a common-law court, subject to any controlling statutes enacted by Congress. See *Exxon Shipping Co.* v. *Baker*, 554 U. S. 471, 507–508 (2008). This maritime tort case raises a question about the scope of a manufacturer's duty to warn. The manufacturers here produced equipment such as pumps, blowers, and turbines for three Navy ships. The equipment required asbestos insulation or asbestos parts in order to function as intended. When used on the ships, the equipment released asbestos fibers into the air. Two Navy veterans who were exposed to asbestos on the ships developed cancer and later died. The veterans' families sued the equipment manufacturers, claiming that the manufacturers were negligent in failing to warn of the dangers of asbestos.

The plaintiffs contend that a manufacturer has a duty to warn when the manufacturer's product requires incorpo-

ration of a part (here, asbestos) that the manufacturer knows is likely to make the integrated product dangerous for its intended uses. The manufacturers respond that they had no duty to warn because they did not themselves incorporate the asbestos into their equipment; rather, the Navy added the asbestos to the equipment after the equipment was already on board the ships.

We agree with the plaintiffs. In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger. The District Court did not apply that test when granting summary judgment to the defendant manufacturers. Although we do not agree with all of the reasoning of the U. S. Court of Appeals for the Third Circuit, we affirm its judgment requiring the District Court to reconsider its prior grants of summary judgment to the defendant manufacturers.

I

Kenneth McAfee served in the U. S. Navy for more than 20 years. As relevant here, McAfee worked on the U. S. S. *Wanamassa* from 1977 to 1980 and then on the U. S. S. *Commodore* from 1982 to 1986. John DeVries served in the U. S. Navy from 1957 to 1960. He worked on the U. S. S. *Turner*.

Those ships were outfitted with equipment such as pumps, blowers, and turbines. That equipment required asbestos insulation or asbestos parts in order to function as intended. When used as intended, that equipment can cause the release of asbestos fibers into the air. If inhaled or ingested, those fibers may cause various illnesses.

Five businesses—Air and Liquid Systems, CBS, Foster Wheeler, Ingersoll Rand, and General Electric—produced

some of the equipment that was used on the ships. Although the equipment required asbestos insulation or asbestos parts in order to function as intended, those businesses did not always incorporate the asbestos into their products. Instead, the businesses delivered much of the equipment to the Navy without asbestos. The equipment was delivered in a condition known as "bare-metal." In those situations, the Navy later added the asbestos to the equipment.[1]

McAfee and DeVries allege that their exposure to the asbestos caused them to develop cancer. They and their wives sued the equipment manufacturers in Pennsylvania state court. (McAfee and DeVries later died during the course of the ongoing litigation.) The plaintiffs did not sue the Navy because they apparently believed the Navy was immune. See *Feres* v. *United States*, 340 U. S. 135 (1950). The plaintiffs also could not recover much from the manufacturers of the asbestos insulation and asbestos parts because those manufacturers had gone bankrupt. As to the manufacturers of the equipment—such as the pumps, blowers, and turbines—the plaintiffs claimed that those manufacturers negligently failed to warn them of the dangers of asbestos in the integrated products. If the manufacturers had provided warnings, the workers on the ships presumably could have worn respiratory masks and thereby avoided the danger.

Invoking federal maritime jurisdiction, the manufacturers removed the cases to federal court. The manufacturers then moved for summary judgment on the ground that manufacturers should not be liable for harms caused by later-added third-party parts. That defense is known as the "bare-metal defense."

---

[1] Sometimes, the equipment manufacturers themselves added the asbestos to the equipment. Even in those situations, however, the Navy later replaced the asbestos parts with third-party asbestos parts.

The District Court granted the manufacturers' motions for summary judgment. The U. S. Court of Appeals for the Third Circuit vacated and remanded. *In re Asbestos Prods. Liability Litigation*, 873 F. 3d 232, 241 (2017). The Third Circuit held that "a manufacturer of a bare-metal product may be held liable for a plaintiff's injuries suffered from later-added asbestos-containing materials" if the manufacturer could foresee that the product would be used with the later-added asbestos-containing materials. *Id.*, at 240.

We granted certiorari to resolve a disagreement among the Courts of Appeals about the validity of the bare-metal defense under maritime law. 584 U. S. ___ (2018). Compare 873 F. 3d 232 (case below), with *Lindstrom* v. *A-C Prod. Liability Trust*, 424 F. 3d 488 (CA6 2005).

## II

Article III of the Constitution grants the federal courts jurisdiction over maritime cases. Under 28 U. S. C. §1333, the federal courts have "original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

When a federal court decides a maritime case, it acts as a federal "common law court," much as state courts do in state common-law cases. *Exxon Shipping Co.*, 554 U. S., at 507. Subject to direction from Congress, the federal courts fashion federal maritime law. See *id.*, at 508, n. 21; *Miles* v. *Apex Marine Corp.*, 498 U. S. 19, 27 (1990); *United States* v. *Reliable Transfer Co.*, 421 U. S. 397, 409 (1975); *Detroit Trust Co.* v. *The Thomas Barlum*, 293 U. S. 21, 42–44 (1934). In formulating federal maritime law, the federal courts may examine, among other sources, judicial opinions, legislation, treatises, and scholarly writings. See *Exxon Co.*, *U. S. A.* v. *Sofec, Inc.*, 517 U. S. 830, 839 (1996); *East River S. S. Corp.* v. *Transamerica*

*Delaval Inc.*, 476 U. S. 858, 864 (1986).

This is a maritime tort case. The plaintiffs allege that the defendant equipment manufacturers were negligent in failing to warn about the dangers of asbestos. "The general maritime law has recognized the tort of negligence for more than a century . . . ." *Norfolk Shipbuilding & Drydock Corp.* v. *Garris*, 532 U. S. 811, 820 (2001); see also *Kermarec* v. *Compagnie Generale Transatlantique*, 358 U. S. 625, 631–632 (1959). Maritime law has likewise recognized common-law principles of products liability for decades. See *East River S. S. Corp.*, 476 U. S., at 865.

In this negligence case, we must decide whether a manufacturer has a duty to warn when the manufacturer's product requires later incorporation of a dangerous part— here, asbestos—in order for the integrated product to function as intended.

We start with basic tort-law principles. Tort law imposes "a duty to exercise reasonable care" on those whose conduct presents a risk of harm to others. 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm §7, p. 77 (2005). For the manufacturer of a product, the general duty of care includes a duty to warn when the manufacturer "knows or has reason to know" that its product "is or is likely to be dangerous for the use for which it is supplied" and the manufacturer "has no reason to believe" that the product's users will realize that danger. 2 Restatement (Second) of Torts §388, p. 301 (1963–1964).

In tort cases, the federal and state courts have not reached consensus on how to apply that general tort-law "duty to warn" principle when the manufacturer's product requires later incorporation of a dangerous part in order for the integrated product to function as intended. Three approaches have emerged.

The first approach is the more plaintiff-friendly foreseeability rule that the Third Circuit adopted in this case: A

manufacturer may be liable when it was foreseeable that the manufacturer's product would be used with another product or part, even if the manufacturer's product did not require use or incorporation of that other product or part. See, *e.g.*, 873 F. 3d, at 240; *Kochera* v. *Foster Wheeler, LLC*, 2015 WL 5584749, *4 (SD Ill., Sept. 23, 2015); *Chicano* v. *General Elec. Co.*, 2004 WL 2250990, *9 (ED Pa., Oct. 5, 2004); *McKenzie* v. *A. W. Chesterson Co.*, 277 Ore. App. 728, 749–750, 373 P. 3d 150, 162 (2016).

The second approach is the more defendant-friendly bare-metal defense that the manufacturers urge here: If a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product—even if the product required incorporation of the part and the manufacturer knew that the integrated product was likely to be dangerous for its intended uses. See, *e.g.*, *Lindstrom*, 424 F. 3d, at 492, 495–497; *Evans* v. *CBS Corp.*, 230 F. Supp. 3d 397, 403–405 (Del. 2017); *Cabasug* v. *Crane Co.*, 989 F. Supp. 2d 1027, 1041 (Haw. 2013).

The third approach falls between those two approaches. Under the third approach, foreseeability that the product may be used with another product or part that is likely to be dangerous is not enough to trigger a duty to warn. But a manufacturer does have a duty to warn when its product *requires* incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses. Under that approach, the manufacturer may be liable even when the manufacturer does not itself incorporate the required part into the product. See, *e.g.*, *Quirin* v. *Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 769–770 (ND Ill. 2014); *In re New York City Asbestos Litigation*, 27 N. Y. 3d 765, 793–794, 59 N. E. 3d 458, 474 (2016); *May* v. *Air & Liquid Systems Corp.*, 446 Md. 1, 29, 129 A. 3d 984, 1000 (2015).

We conclude that the third approach is the most appro-

priate for this maritime tort context.

To begin, we agree with the manufacturers that a rule of mere foreseeability would sweep too broadly. See generally 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm §7, Comment *j*, at 82; 2 Restatement (Second) of Torts §395, Comment *j*, at 330. Many products can foreseeably be used in numerous ways with numerous other products and parts. Requiring a product manufacturer to imagine and warn about all of those possible uses—with massive liability looming for failure to correctly predict how its product might be used with other products or parts—would impose a difficult and costly burden on manufacturers, while simultaneously overwarning users. In light of that uncertainty and unfairness, we reject the foreseeability approach for this maritime context.

That said, we agree with the plaintiffs that the bare-metal defense ultimately goes too far in the other direction. In urging the bare-metal defense, the manufacturers contend that a business generally has "no duty" to "control the conduct of a third person as to prevent him from causing physical harm to another." *Id.*, §315, at 122. That is true, but it is also beside the point here. After all, when a manufacturer's product is dangerous in and of itself, the manufacturer "knows or has reason to know" that the product "is or is likely to be dangerous for the use for which it is supplied." *Id.*, §388, at 301. The same holds true, we conclude, when the manufacturer's product requires incorporation of a part that the manufacturer knows or has reason to know is likely to make the integrated product dangerous for its intended uses. As a matter of maritime tort law, we find no persuasive reason to distinguish those two similar situations for purposes of a manufacturer's duty to warn. See Restatement (Third) of Torts: Products Liability §2, Comment *i*, p. 30 (1997) ("[W]arnings also may be needed to inform users and

consumers of nonobvious and not generally known risks that unavoidably inhere in using or consuming the product").

Importantly, the product manufacturer will often be in a better position than the parts manufacturer to warn of the danger from the integrated product. See generally G. Calabresi, The Costs of Accidents 311–318 (1970). The product manufacturer knows the nature of the ultimate integrated product and is typically more aware of the risks associated with that integrated product. By contrast, a parts manufacturer may be aware only that its part could conceivably be used in any number of ways in any number of products. A parts manufacturer may not always be aware that its part will be used in a way that poses a risk of danger.[2]

To be sure, as the manufacturers correctly point out, issuing a warning costs time and money. But the burden usually is not significant. Manufacturers already have a duty to warn of the dangers of their own products. That duty typically imposes a light burden on manufacturers. See, *e.g.*, *Davis* v. *Wyeth Labs., Inc.*, 399 F. 2d 121, 131 (CA9 1968); *Butler* v. *L. Sonneborn Sons, Inc.*, 296 F. 2d 623, 625–626 (CA2 1961); *Ross Labs.* v. *Thies*, 725 P. 2d 1076, 1079 (Alaska 1986); *Moran* v. *Faberge, Inc.*, 273 Md. 538, 543–544, 332 A. 2d 11, 15 (1975). Requiring a manufacturer to also warn when the manufacturer knows or has reason to know that a required later-added part is likely to make the integrated product dangerous for its intended uses should not meaningfully add to that burden.

The manufacturers also contend that requiring a warning even when they have not themselves incorporated the part into the product will lead to uncertainty about when product manufacturers must provide warnings. But the

---

[2] We do not rule out the possibility that, in certain circumstances, the parts manufacturer may also have a duty to warn.

manufacturers have not pointed to any substantial confusion in those jurisdictions that have adopted this approach. And the rule that we adopt here is tightly cabined. The rule does not require that manufacturers warn in cases of mere foreseeability. The rule requires that manufacturers warn only when their product *requires* a part in order for the integrated product to function as intended.

The manufacturers further assert that requiring a warning in these circumstances will lead to excessive warning of consumers. Again, however, we are not aware of substantial overwarning problems in those jurisdictions that have adopted this approach. And because the rule we adopt here applies only in certain narrow circumstances, it will not require a plethora of new warnings.

Requiring the product manufacturer to warn when its product requires incorporation of a part that makes the integrated product dangerous for its intended uses—and not just when the manufacturer itself incorporates the part into the product—is especially appropriate in the maritime context. Maritime law has always recognized a "special solicitude for the welfare" of those who undertake to "venture upon hazardous and unpredictable sea voyages." *American Export Lines, Inc.* v. *Alvez*, 446 U. S. 274, 285 (1980) (internal quotation marks omitted). The plaintiffs in this case are the families of veterans who served in the U. S. Navy. Maritime law's longstanding solicitude for sailors reinforces our decision to require a warning in these circumstances. See *Yamaha Motor Corp., U. S. A.* v. *Calhoun*, 516 U. S. 199, 213 (1996); *Miles*, 498 U. S., at 36; *Moragne* v. *States Marine Lines, Inc.*, 398 U. S. 375, 387 (1970).

For those reasons, we conclude as follows: In the maritime tort context, a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its

intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger. We do not purport to define the proper tort rule outside of the maritime context.

One final point for clarity: Courts have determined that this rule applies in certain related situations, including when: (i) a manufacturer directs that the part be incorporated, see, *e.g.*, *Bell* v. *Foster Wheeler Energy Corp.*, 2016 WL 5780104, *6–*7 (ED La., Oct. 4, 2016); (ii) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part, see, *e.g.*, *Chesher* v. *3M Co.*, 234 F. Supp. 3d 693, 713–714 (S. C. 2017); *Quirin*, 17 F. Supp. 3d, at 769–770; *May*, 446 Md., at 29, 129 A. 3d, at 1000; or (iii) a product would be useless without the part, see, *e.g.*, *In re New York City Asbestos Litigation*, 27 N. Y. 3d, at 793–794, 59 N. E. 3d, at 474.  In all of those situations, courts have said that the product in effect requires the part in order for the integrated product to function as intended.  We agree. The maritime tort rule we adopt today therefore encompasses those situations, so long as the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and the manufacturer has no reason to believe that the product's users will realize that danger.

\* \* \*

In the maritime tort context, we hold that a product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.  The District Court should evaluate the evidence under that rule.  Although we do not agree with all of the reasoning of the Third Circuit, we

affirm its judgment requiring the District Court to reconsider its prior grants of summary judgment to the defendant manufacturers.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–1104

_____

AIR AND LIQUID SYSTEMS CORP., ET AL.,
PETITIONERS *v*. ROBERTA G. DeVRIES,
INDIVIDUALLY AND AS ADMINISTRATRIX OF
THE ESTATE OF JOHN B. DeVRIES,
DECEASED, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[March 19, 2019]

JUSTICE GORSUCH, with whom JUSTICE THOMAS and JUSTICE ALITO join, dissenting.

Decades ago, many of the defendants before us sold "bare metal" products to the Navy. Things like the turbines used to propel its ships. Did these manufacturers have to warn users about the dangers of asbestos that *someone else* later chose to add to or wrap around their products as insulation?

Start with a couple of things we can all agree on. First, everyone accepts that, under traditional tort principles, the manufacturers who actually supplied the later-added asbestos had to warn about its known dangers. Second, everyone agrees that the court of appeals erred when it came to analyzing the duties of the bare metal defendants. The court of appeals held that the bare metal manufacturers had a duty to warn because they could have "foreseen" the possibility that others would later use asbestos in conjunction with their products. Today, the Court rightly rejects this "foreseeability" standard, succinctly explaining that "[r]equiring a product manufacturer to imagine and warn about all of those possible uses—with massive liability looming for failure to correctly predict how its product

might be used with other products or parts—would impose a difficult and costly burden on manufacturers, while simultaneously overwarning users." *Ante*, at 7.

Our disagreement arises only in what comes next. Immediately after rejecting the court of appeals' approach, the Court proceeds to devise its own way of holding the bare metal manufacturers responsible for later-added asbestos. In the Court's judgment, the bare metal defendants had a duty to warn about the dangers of asbestos introduced by others so long as they (i) produced a product that "require[d] incorporation of" asbestos, (ii) "kn[ew] or ha[d] reason to know" that the "integrated product" would be dangerous, and (iii) had "no reason to believe" that users would realize that danger. *Ante*, at 9–10. The Court's new three-part standard surely represents an improvement over the court of appeals' unadorned "foreseeability" offering. But, respectfully, it seems to me to suffer from many of the same defects the Court itself has identified.

In the first place, neither of these standards enjoys meaningful roots in the common law. The common law has long taught that a manufacturer has no "duty to warn or instruct about another manufacturer's products, though those products might be used in connection with the manufacturer's own products." *Firestone Steel Prods. Co.* v. *Barajas*, 927 S. W. 2d 608, 616 (Tex. 1996). Instead, "the manufacturer's duty is restricted to warnings based on the characteristics of *the manufacturer's own product*." *Powell* v. *Standard Brands Paint Co.*, 166 Cal. App. 3d 357, 364, 212 Cal. Rptr. 395, 398 (1985).[1] It doesn't matter, either,

---

[1] See also, *e.g.*, *Dreyer* v. *Exel Industries, S. A.*, 326 Fed. Appx. 353, 357–358 (CA6 2009); *Barnes* v. *Kerr Corp.*, 418 F. 3d 583, 590 (CA6 2005); *Reynolds* v. *Bridgestone/Firestone, Inc.*, 989 F. 2d 465, 472 (CA11 1993); *Baughman* v. *General Motors Corp.*, 780 F. 2d 1131, 1133 (CA4 1986); *In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1068 (ND Cal. 2005); *Acoba* v. *General Tire, Inc.*, 92 Haw. 1, 18, 986 P. 2d

whether a manufacturer's product happens to be (or is designed to be) "integrated" with another's. Instead, it is black-letter law that the supplier of a product generally must warn about only those risks associated with the product itself, not those associated with the "products and systems into which [it later may be] integrated." Restatement (Third) of Torts: Products Liability §5, Comment *b*, p. 132 (1997).[2]

More than that, the traditional common law rule still makes the most sense today. The manufacturer of a product is in the best position to understand and warn users about its risks; in the language of law and economics, those who make products are generally the least-cost avoiders of their risks. By placing the duty to warn on a product's manufacturer, we force it to internalize the full cost of any injuries caused by inadequate warnings—and in that way ensure it is fully incentivized to provide adequate warnings. By contrast, we dilute the incentive of a manufacturer to warn about the dangers of its products when we require other people to share the duty to warn and its corresponding costs. See S. Shavell, Economic

_____

288, 305 (1999); *Brown* v. *Drake-Willock Int'l, Ltd.*, 209 Mich. App. 136, 144–146, 530 N. W. 2d 510, 514–515 (1995); *Rastelli* v. *Goodyear Tire & Rubber Co.*, 79 N. Y. 2d 289, 297–298, 591 N. E. 2d 222, 225–226 (1992); *Walton* v. *Harnischfeger*, 796 S. W. 2d 225, 226 (Tex. App. 1990); *Toth* v. *Economy Forms Corp.*, 391 Pa. Super. 383, 388–389, 571 A. 2d 420, 423 (1990); *Mitchell* v. *Sky Climber, Inc.*, 396 Mass. 629, 631–632, 487 N. E. 2d 1374, 1376 (1986); *Johnson* v. *Jones-Blair Paint Co.*, 607 S. W. 2d 305, 306 (Tex. Civ. App. 1980); 63A Am. Jur. 2d, Products Liability §1027, p. 247 (2010); Behrens & Horn, Liability for Asbestos-Containing Connected or Replacement Parts Made by Third-Parties: Courts Are Properly Rejecting This Form of Guilt by Association, 37 Am. J. Trial Advocacy 489, 494–497 (2014).

[2] See, *e.g.*, *Cipollone* v. *Yale Indus. Prods., Inc.*, 202 F. 3d 376, 379 (CA1 2000); *Crossfield* v. *Quality Control Equip. Co.*, 1 F. 3d 701, 703–704 (CA8 1993); *Childress* v. *Gresen Mfg. Co.*, 888 F. 2d 45, 48–49 (CA6 1989); *Koonce* v. *Quaker Safety Prods. & Mfg. Co.*, 798 F. 2d 700, 715 (CA5 1986).

Analysis of Accident Law 17 (1987); G. Calabresi, The Costs of Accidents 135, and n. 1 (1970); *Italia Societa per Azioni di Navigazione* v. *Oregon Stevedoring Co.*, 376 U. S. 315, 324 (1964).[3]

The traditional common law rule better accords, too, with consumer expectations. A home chef who buys a butcher's knife may expect to read warnings about the dangers of knives but not about the dangers of under-cooked meat. Likewise, a purchaser of gasoline may expect to see warnings at the pump about its flammability but not about the dangers of recklessly driving a car. As the Court today recognizes, encouraging manufacturers to offer warnings about other people's products risks long, duplicative, fine print, and conflicting warnings that will leave consumers less sure about which to take seriously and more likely to disregard them all. In the words of the California Supreme Court, consumer welfare is not well "served by requiring manufacturers to warn about the dangerous propensities of products they do not design, make, or sell." *O'Neil* v. *Crane Co.*, 53 Cal. 4th 335, 343, 266 P. 3d 987, 991 (2012); see also *Cotton* v. *Buckeye Gas Prods. Co.*, 840 F. 2d 935, 938 (CADC 1988) ("The inclusion of each extra item dilutes the punch of every other item. Given short attention spans, items crowd each other

---

[3] See also Restatement (Third) of Torts: Products Liability §5, Comment *a*, p. 131 (1997) ("If the component is not itself defective, it would be unjust and inefficient to impose liability solely on the ground" that others "utiliz[e] the component in a manner that renders the integrated product defective"); *Edwards* v. *Honeywell, Inc.*, 50 F. 3d 484, 490 (CA7 1995) (placing liability on a defendant who is not "in the best position to prevent a particular class of accidents" may "dilute the incentives of other potential defendants" who should be the first "line of defense"); *National Union Fire Ins. Co. of Pittsburgh* v. *Riggs Nat. Bank of Washington, D. C.*, 5 F. 3d 554, 557 (CADC 1993) (Silberman, J., concurring) ("Placing liability with the least-cost avoider increases the incentive for that party to adopt preventive measures" that will "have the greatest marginal effect on preventing the loss").

out; they get lost in fine print").

The traditional tort rule bears yet another virtue: It is simple to apply. The traditional rule affords manufacturers fair notice of their legal duties, lets injured consumers know whom to sue, and ensures courts will treat like cases alike. By contrast, when liability depends on the application of opaque or multifactor standards like the one proposed below or the one announced today, "equality of treatment" becomes harder to ensure across cases; "predictability is destroyed" for innovators, investors, and consumers alike; and "judicial courage is impaired" as the ability (and temptation) to fit the law to the case, rather than the case to the law, grows. Scalia, The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175, 1182 (1989).

Just consider some of the uncertainties each part of the Court's new three-part test is sure to invite:

(i) When does a customer's side-by-side use of two products qualify as "incorporation" of the products? Does hanging asbestos on the outside of a boiler count, or must asbestos be placed inside a product? And when is incorporation of a dangerous third-party product "required" as opposed to just optimal or preferred? What if a potential substitute existed, but it was less effective or more costly (surely alternatives to asbestos insulation have existed for a long time)? And what if the third-party product becomes less advantageous over time due to advancing technology (as asbestos did)? When does the defendant's duty to warn end?

(ii) What will qualify as an "integrated product"? In the past, we've suggested that a "product" is whatever assemblage of parts is "placed in the stream of commerce by the manufacturer," and we've stressed the importance of maintaining the "distinction between the components added to a product by a manufacturer

before the product's sale . . . and those items added" later by someone else. *Saratoga Fishing Co.* v. *J. M. Martinac & Co.*, 520 U. S. 875, 883–884 (1997). The Court's new standard blurs that distinction, but it is unclear how far it goes. The Court suggests a turbine and separately installed insulation may now qualify as a single "integrated product." But what about other parts connected to the turbine? Does even the propeller qualify as part of the final "integrated product" too, so that its manufacturer also bears a duty to warn about the dangers of asbestos hung around the turbine? For that matter, why isn't the entire ship an "integrated product," with a corresponding duty for all the manufacturers who contributed parts to warn about the dangers of all the other parts? And when exactly is a manufacturer supposed to "know or have reason to know" that some supplement to its product has now made a resulting "integrated product" dangerous? How much cost and effort must manufacturers expend to discover and understand the risks associated with third-party products others may be "incorporating" with their products?

(iii) If a defendant reasonably expects that the manufacturer of a third-party product will comply with its own duty to warn, is that sufficient "reason to believe" that users will "realize" the danger to absolve the defendant of responsibility? Or does a defendant have to assume that the third-party manufacturer will behave negligently in rendering its own warnings? Or that users won't bother to read the warnings others offer? And what if the defendants here understood that the Navy itself would warn sailors about the need for proper handling of asbestos—did they still have to

provide their own warnings?[4]

Headscratchers like these are sure to enrich lawyers and entertain law students, but they also promise to leave everyone else wondering about their legal duties, rights, and liabilities.

Nor is this kind of uncertainty costless. Consider what might follow if the Court's standard were widely adopted in tort law. Would a company that sells smartphone cases have to warn about the risk of exposure to cell phone radiation? Would a car maker have to warn about the risks of improperly stored antifreeze? Would a manufacturer of flashlights have to warn about the risks associated with leaking batteries? Would a seller of hot dog buns have to warn about the health risks of consuming processed meat? Just the threat of litigation and liability would force many manufacturers of safe products to spend time and money educating themselves and writing warnings about the dangers of other people's more dangerous products. All this would, as well, threaten to leave consumers worse off. After all, when we effectively require manufacturers of safe products to subsidize those who make more dangerous items, we promise to raise the price and restrict the output of socially productive products. Tort law is supposed to be about aligning liability with responsibility, not mandating a social insurance policy in which everyone must pay for everyone else's mistakes.

Finally and relatedly, the Court's new standard implicates the same sort of fair notice problem that the court of appeals' standard did. Decades ago, the bare metal defendants produced their lawful products and provided all the warnings the law required. Now, they are at risk of

---

[4] See App. 40 (affidavit of retired Rear Admiral Roger B. Horne stating that "the Navy chose to control and make personnel aware of the hazards of asbestos exposures through . . . military specifications and personnel training").

being held responsible retrospectively for failing to warn about other people's products. It is a duty they could not have anticipated then and one they cannot discharge now. They can only pay. Of course, that may be the point. In deviating from the traditional common law rule, the Court may be motivated by the unfortunate facts of this particular case, where the sailors' widows appear to have a limited prospect of recovery from the companies that supplied the asbestos (they've gone bankrupt) and from the Navy that allegedly directed the use of asbestos (it's likely immune under our precedents). *Ante*, at 3. The bare metal defendants may be among the only solvent potential defendants left. But how were they supposed to anticipate many decades ago the novel duty to warn placed on them today? People should be able to find the law in the books; they should not find the law coming upon them out of nowhere.

Still, there's a silver lining here. In announcing its new standard, the Court expressly states that it does "not purport to define the proper tort rule outside of the maritime context." *Ante*, at 10. Indeed, the Court acknowledges that it has created its new standard in part because of the "solicitude for sailors" that is a unique feature of our maritime jurisdiction. *Ante*, at 9. All of this means, of course, that nothing in today's opinion compels courts operating outside the maritime context to apply the test announced today. In other tort cases, courts remain free to use the more sensible and historically proven common law rule. And given that, "unlike state courts, we have little . . . experience in the development of new common-law rules of tort," *Saratoga*, 520 U. S., at 886 (Scalia, J., dissenting), that is a liberty they may be wise to exercise.[5]

---

[5] As the Court notes, some of the defendants sold the Navy products that were not "bare metal" but contained asbestos at the time of sale. *Ante*, at 3, n. 1. We can all agree that those defendants had a duty to

———

warn users about the known dangers of asbestos. And there's a colorable argument that their responsibility didn't end when the Navy, as part of routine upkeep, swapped out the original asbestos parts for replacements supplied by others. Under traditional tort principles, the seller of a defective, "unreasonably dangerous" product may be liable to an injured user if the product "is expected to and does reach the user . . . without substantial change in the condition in which it is sold." 2 Restatement (Second) of Torts §402A(1)(b), pp. 347–348 (1963–1964). And replacing worn-out parts every now and then with equivalently dangerous third-party parts may not qualify as a "substantial change" if the replacement part does "no more than perpetuate" problems latent in the original. *Sage* v. *Fairchild-Swearingen Corp.*, 70 N. Y. 2d 579, 584–587, 517 N. E. 2d 1304, 1306–1308 (1987); see, *e.g.*, *Whelan* v. *Armstrong Int'l Inc.*, 455 N. J. Super. 569, 597–598, 190 A. 3d 1090, 1106–1107 (App. Div. 2018). Of course, the defendants' original failure to warn might not be the legal cause of any harm if the use of the replacement part was unforeseeable, or if an intervening action severed the connection between the original sale and the injurious use. For example, if the replacement part itself posed the danger—or if, by the time the original part wore out, safer alternatives had become available. The Court's new standard, however, does not address these defendants separately, but focuses on the bare metal defendants.