J-A21005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COLLEEN SCHRADER, PERSONAL REPRESENTATIVE OF THE ESTATE OF ERNEST SCHRADER, DECEASED, AND INDIVIDUALLY AS WIDOW IN HER OWN RIGHT | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| AMERON INTERNATIONAL CORPORATION | : : | No. 2609 EDA 2018 |

Appeal from the Judgment Entered August 15, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  160901786

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 24, 2020**

Colleen Schrader ("Plaintiff") appeals, in her own right and as representative of the estate of Earnest Schrader, from the judgment entered upon the jury verdict in favor of defendant Ameron International Corporation ("Ameron") in this asbestos case.  We vacate the judgment and remand for a new trial.

The trial court summarized the underlying facts of Plaintiff's negligence action as follows.

> Ernest Schrader ("Mr. Schrader") was employed at the E.I. Nemours DuPont ("Dupont") Edgemoor Facility ("Edgemoor") from 1966 to 2001.  Mr. Schrader worked as a trainee millwright from 1975 to 1978 and a millwright from 1978 to 2001.  Mr. Schrader died of malignant mesothelioma on September 27, 2017.  Prior to his death, Mr. Schrader was deposed on videotape on December 19-23, 2016.  His deposition was played in court on March 15, 2018.

Mr. Schrader testified he was exposed to asbestos in his work as a millwright. In addition to other materials, Mr. Schrader cut and installed an asbestos-containing pipe, Bondstrand 4000, which was [a corrosion-resistant, fiberglass-reinforced plastic pipe containing a thin asbestos-containing layer] manufactured by [Ameron]. [Ameron] commercially produced Bondstrand 4000 beginning in the 1960's and ceased its manufacture in 1979. Mr. Schrader worked with Bondstrand 4000 from 1975 to 1983. [Mr. Schrader also testified that he inhaled dust from asbestos-containing gaskets and Palmetto and Durametallic packing that he installed and removed from pumps, such as those manufactured by Armstrong and Lawrence.] Mr. Schrader believed he contracted mesothelioma as a result of his exposure to asbestos.

On March 23, 2018, an eight-person jury returned a verdict in favor of [Ameron] and against Plaintiff. The verdict slip included [Ameron] and four additional defendants: Armstrong Pumps, Inc., Durametallic Corporation, Greene Tweed & Company (Palmetto), and Lawrence Pumps, Inc. The jury found [that, while Mr. Schrader's mesothelioma was caused by his exposure to asbestos from the products of Ameron and the additional defendants,] the additional defendants were negligent but . . . [Ameron] was not negligent.

Trial Court Opinion, 2/27/19, at 3 (citations and unnecessary capitalization omitted). The additional defendants had settled before trial, and the jury was advised of that fact.

Judgment was entered on the verdict after Plaintiff's post-trial motion was denied. Plaintiff thereafter filed a timely notice of appeal, and both Plaintiff and the trial court complied with Pa.R.A.P. 1925.

Plaintiff presents to this Court the following questions, which we have re-ordered for ease of disposition:

[1.] Is Plaintiff entitled to a new trial as to all issues where the verdict of the jury in favor of Ameron to the effect that Ameron was not negligent, but that each of the four settled cross-

defendants who were included on the jury verdict sheet were negligent, was contrary to the overwhelming weight of the evidence presented at trial and was so inconsistent as to be an irreconcilable verdict?

[2.] Did the trial court commit a prejudicial error of law and/or abuse its discretion in precluding Plaintiff's counsel from cross-examining Ameron's corporate witness regarding the contents of a July 31, 1975 letter to Ameron from its industrial hygienist where such evidence was directly relevant to the issue of Ameron's negligence and was not unduly prejudicial?

[3.] Did the trial court commit a prejudicial error of law and/or abuse its discretion by precluding from evidence published statements by OSHA concerning the risks associated with exposure to asbestos where such statements were directly relevant to the duty that Ameron owed to the end users of its product, Ameron's breach of that duty, and Ameron's negligence, and contradicted the opinions and conclusions of Ameron's sole expert regarding OSHA and what, in the eyes of OSHA, constituted a safe product?

[4.] Did the trial court commit a prejudicial error of law and/or abuse its discretion by refusing to provide the jury with a copy of an exhibit properly admitted into evidence when the jury specifically requested to see the exhibit in question during the course of its deliberations where the exhibit in question was directly relevant to the issue being decided by the jury?

[5.] Did the trial court commit a prejudicial error of law by permitting Ameron to pursue cross-claims against two settled defendants – including the introduction of evidence against those settled defendants and their inclusion on the jury verdict sheet for the purposes of assessing and apportioning liability – when, as a matter of the substantive law of Delaware, all claims against those settled defendants were barred?

Plaintiff's brief at 5-7 (unnecessary capitalization omitted).

We first consider Plaintiff's argument that the verdict was against the weight of the evidence. The following principles guide our review:

> [T]his Court's review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether we believe that the verdict is against the weight of the evidence. Moreover, a new trial will be granted on the basis that the jury's verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice. In reviewing the trial court's refusal to grant a new trial on this basis, this Court reviews all of the evidence.

*Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 881 (Pa.Super. 2017) (cleaned up).

By way of background, the testimony of Mr. Schrader about his exposures to all of the products at issue was substantially similar. He indicated that from the mid 1970s through the early 1980s, he worked "quite often" with Ameron's Bondstrand pipe, Durametallic and Palmetto packing, and Armstrong and Lawrence pumps. *See* Plaintiff's Exhibit 7 (Transcript of Videotaped Deposition of Mr. Schrader) at 49-119. Mr. Schrader described how his manipulation of each product created dust that he inhaled, and that none of the products contained warnings about the hazards of asbestos. *See id*.

Plaintiff's medical expert testified that Mr. Schrader's exposure to asbestos from Bondstrand and gaskets and packing used on pumps caused his death from malignant mesothelioma. *See* N.T. Trial, 3/19/18, at 62-63, 96-103. As Bondstrand contained crocidolite asbestos, the most malignant type of asbestos fiber, while the products of the settled defendants contained the more common but less potent chrysotile asbestos, the jury heard that the

Bondstrand exposures alone were sufficient to have caused Mr. Shrader's disease and death. ***See id***. at 40-42.

Plaintiff also proffered expert testimony concerning historical knowledge of the relationship between asbestos and lung disease, such that, through medical journals and trade associations, manufacturers could have known, long before Mr. Schrader began working with the products at issue, that asbestos exposure caused mesothelioma, and that there was no safe level of exposure to asbestos. ***See*** N.T. Trial, 36/14/18, at 70-106. In addition, Plaintiff introduced evidence that Ameron actually knew that its Bondstrand pipe posed a health risk years before it began warning end users like Mr. Schrader of the danger so that they could protect themselves. For example, in an interoffice memorandum dated September 11, 1978, Ameron employee Neal Lambly made recommendations on how Ameron "should do all [it] can to educate our customers and minimize the utilization of asbestos," such as issuing a data bulletin about asbestos and use of Bondstrand in construction, and including with the assembly instructions a diagram of the proper way to use breathing protection. He also recommended that caution labels be used until asbestos was removed from the product line. ***See*** Plaintiff's Exhibit 9 (Transcript of Videotaped Deposition of Neal Lambly) at Exhibit 5.

Ameron defended the case by producing evidence that it acted reasonably based upon the circumstances at the time. In particular, Ameron maintained that it hired professionals to assess the risk created by the

asbestos in Bondstrand, and took steps to ensure that asbestos exposures from its use did not exceed the applicable OSHA regulations. *See* N.T. Trial, 3/20/18, at 46-53. Eventually, it included a caution label on the product. *Id*. at 54-55. Ameron also offered evidence that the use of Bondstrant described by Mr. Schrader did not increase his risk of developing mesothelioma because his exposures to asbestos from it were no higher than background exposures. *See* N.T. Trial, 3/22/18, at 55.

Notably, neither Plaintiff nor Ameron offered any evidence concerning the actual knowledge of the settling defendants of the dangers presented by asbestos exposure, or any efforts of those companies to ascertain and warn of risks associated with their asbestos-containing products.

Upon this evidentiary record, the jury concluded that Mr. Schrader's mesothelioma was proximately caused by his exposure to asbestos, and that Mr. Schader was exposed to asbestos from products manufactured or supplied by Ameron and all four settled defendants. *See* N.T. Trial, 3/23/18, at 129-30. However, as to the question of whether the defendants were negligent, the jury answered "no" as to Ameron, but "yes" as to each of the settled defendants. *See id*. at 130. In essence, Plaintiff's argument is that the trial court abused its discretion in declining to grant a new trial based upon the weight of the evidence because it is both shocking and irreconcilable that the jury found that the settled defendants were negligent, but that Ameron was not. *See* Plaintiff's brief at 81-85.

The trial court indicated that it denied Plaintiff's weight-of-the-evidence post-trial motion because the jury heard sufficient evidence to allow it to conclude that Ameron took reasonable measures to act responsibly based upon the knowledge available at the time. The court reasoned further that Ameron was not required to include a warning on Bondstrand because the asbestos exposure generated by use of the pipe did not exceed OSHA limits at the time. *See* Trial Court Opinion, 2/27/19, at 5-8. On the other hand, the trial court opined, the evidence was sufficient to allow the jury to conclude that the settled defendants were negligent. *See id*. at 8-10.

Upon this record, we cannot hold that the trial court abused its discretion in not finding its conscience shocked by the verdict. While Plaintiff established the general proposition that all responsible manufacturers should have known by the time of Mr. Schrader's exposure that asbestos posed a hazard to his health, the jury heard evidence that Ameron took efforts to comply with its duty of care, but heard of no such efforts by the other companies. Hence, the jury had a reasonable basis for finding Ameron non-negligent, but holding the other companies liable. Accordingly, the trial court's determination was not manifestly unreasonable, and may not be disturbed by this Court.

Plaintiff's next two issues challenge evidentiary rulings of the trial court. We consider them mindful of the following legal principles:

> Decisions regarding the admissibility of evidence are vested in the sound discretion of the trial court, and, as such, are reviewed for an abuse of discretion. An abuse of discretion occurs where the trial court reaches a conclusion that overrides or

misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will. To the degree the issue of whether the law has been misapplied involves a purely legal question, it is reviewed *de novo*.

*Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019) (internal citations and quotation marks omitted).

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. For evidence to be admissible, it must be competent and relevant. Evidence is competent if it is material to the issue to be determined at trial. Evidence is relevant if it tends to prove or disprove a material fact. Relevant evidence is admissible if its probative value outweighs its prejudicial impact. The trial court's rulings regarding the relevancy of evidence will not be overturned absent an abuse of discretion. A party suffers prejudice when the trial court's error could have affected the verdict.

*Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 101 (Pa.Super. 2011) (citations and internal quotation marks omitted).

In her first evidentiary issue, Plaintiff challenges the trial court's refusal to allow her to cross-examine Ameron's corporate representative with a 1975 letter from Howard Spielman, an industrial hygienist whose company Health Science Associates ("HSA") was hired by Ameron. Ameron had retained HSA "to review Ameron's use of asbestos and to make recommendations regarding control measures and work practices to help ensure that Ameron was in compliance with the applicable OSHA regulations and exposure limits." Plaintiff's brief at 23.

Plaintiff indicates that, the "principal feature" of Ameron's defense at trial was its corporate representative's testimony that Ameron followed Mr.

Spielman's suggestions and was in compliance with governmental standards.

*Id*. Plaintiff contends that the 1975 letter in question "directly contradicts Ameron's defense" by evincing that Mr. Spielman's "recommendations were **not** being followed by Ameron and that Ameron was **not** in compliance with applicable OSHA requirements." *Id*. at 23-24 (emphasis in original).

Plaintiff argues that the "1975 letter was directly relevant to the issue of the negligent conduct of Ameron, . . . and was not unduly prejudicial." Plaintiff's brief at 25. Plaintiff also avers that the trial court's refusal to allow her to utilize the letter in cross-examining Ameron's representative was prejudicial because evidence that Ameron did not heed Mr. Spielman's advice "clearly **may have** influenced the jury's verdict." *Id*. at 27 (emphasis in original) (citing **Collins v. Cooper**, 746 A.2d 615, 620 (Pa.Super. 2000) (providing prejudice is shown and a new trial is warranted if improperly admitted evidence may have affected the verdict)).

Mr. Spielman's letter states as follows, in relevant part:

Beginning in April, 1972 we identified several potential occupational health hazards requiring evaluation. In May, 1972 the asbestos hazards in the batch mixing operation (then in the Bondstrand Bldg.) were identified and reported to management. In the ensuing months other health hazards including styrene, several solvent vapors, lead, vinyl chloride and other asbestos activities were identified and reported. In all cases, recommendations for improvement by way of control measures, work practices and periodic air sampling were made.

In 1973 and 1974 we were called upon to intercede with OSHA and NIOSH personnel on behalf of the Corrosion Control Division. On both occasions we found ourselves in a situation where our recommendations had not been heeded. Fortunately, on only one

of those occasions did the government representatives see our reports. On that occasion our personal rapport with the OSHA Industrial Hygienist was instrumental in precluding the issuance of a citation.

Part of the corrective action necessary for the Division was to institute periodic air sampling to maintain surveillance of employee exposures. The magnitude of this surveillance equipment was such that, for economic reasons favorable to Ameron, we agreed to train Corrosion Division personnel to take the periodic air samples. Although air sampling for evaluation of employee exposures and compliance with CAL-OSHA and OSHA standards is a professional Industrial Hygiene function, we felt that with certain understandings the self-monitoring program could work.

These understandings on our part were as follows.

1. Ameron personnel would take samples in the manner, locations and frequency prescribed by HSA.

2. All samples would be submitted to HSA for analysis.

3. Initial motoring of activities and/or operators would be accomplished by HSA.

4. HSA would be called upon to review plans and specifics for control systems prior to their installation.

5. HSA would be called upon to review medical surveillance and respiratory protection requirements.

6. HSA would be called upon annually to validate the work done by Ameron's personnel.

The experience with this program has been that HSA's services have not been utilized as described above and that Ameron's personnel have assumed responsibility for professional Industrial Hygiene decisions. As a result we have not been in the position to certify the work done by Ameron personnel or provide professional Industrial Hygiene surveillance necessary for your program.

Plaintiff's Brief in Support of Post-Trial Motion, 5/2/18, at Exhibit AA.

The trial court addressed Plaintiff's claim of error as follows:

> The court properly excluded the 1975 letter from being admitted into evidence during the cross-examination of [Ameron's corporate representative]. The 1975 letter contained recommendations about air sampling and OSHA compliance at Defendant's manufacturing facility in Brea, California. However, Mr. Schrader was never employed by [Ameron] and never worked in any of [Ameron's] manufacturing facilities. Mr. Schrader testified to working with Bondstrand 4000 only at the E.I. Nemours DuPont facility in Edgemoor, Delaware. The 1975 letter involved operations and processes, including mixing of raw asbestos fibers that were not at issue in the trial.
>
> The operations and processes involved in the 1975 letter were irrelevant in products liability involving Bondstrand 4000.

Trial Court Opinion, 2/27/19, at 10-11 (citations omitted).

We discern no abuse of discretion in the trial court's ruling. Plaintiff offers no indication that Mr. Schrader's asbestos exposures through utilizing the finished Bondstrand pipe were similar to those experience by Ameron employees in the California plant where Bondstrand was manufactured. Nor does Plaintiff explain how Ameron's alleged failure to use HSA employees instead of its own staff to do air sampling and analysis in its California manufacturing plant had any bearing on whether Ameron breached a duty to Mr. Schrader or any end users of its products in Delaware or anywhere else. Moreover, as Ameron notes, the trial court did allow Plaintiff to introduce other information about Ameron's knowledge of its employees' asbestos exposures. *See* Ameron's brief at 35-39. Consequently, even if the 1975 letter was improperly excluded, we are not convinced that its exclusion could have impacted the verdict. Plaintiff's first evidentiary issue merits no relief.

- 11 -

Plaintiff's second evidentiary challenge concerns the trial court's refusal to allow her to cross-examine Gayla McCluskey, Ameron's industrial hygiene expert witness, with statements on OSHA's website, including portions of the following:

> Worker exposure to asbestos hazards are addressed in specific OSHA standards for the construction industry, general industry and shipyard employment sectors. These standards **reduce the risk** to workers by requiring that employers provide personal exposure monitoring to assess the risk and hazard awareness training for operations where there is any potential exposure to asbestos. Airborne levels of asbestos are never to exceed legal worker exposure limits. There is **no "safe" level of asbestos exposure** for any type of asbestos fiber. Asbestos exposures as short in duration as a few days have **caused mesothelioma** in humans. Every occupational exposure to asbestos **can cause injury or disease**; every occupational exposure to asbestos contributes to the risk of getting an asbestos related disease.

*See* Court Exhibit 1 (footnotes omitted; emphases added).

Plaintiff argues that the statements, viewable via a link on Ms. McCluskey's website, were relevant to counter her "testimony to the effect that, during the relevant time period, Ameron was in compliance with then-applicable OSHA regulations and that, accordingly, its asbestos-containing Bondstrand pipe was 'safe.'" Plaintiff's brief at 48. Plaintiff contends that it was reversible error for the trial court to preclude her from "confronting [Ms. McCluskey] with official pronouncements by OSHA that contradicted her opinions and conclusions in this case[.]" *Id*. at 50. Although acknowledging that the trial court did indeed allow Plaintiff to read the statements from the website to Ms. McCluskey and ask her whether she agreed or disagreed with

them, Plaintiff posits that the court's failure to allow introduction of the material "had a significant impact on the weight and probative value of the statements and resulted in significant prejudice to Plaintiff[.]" *Id*.

The trial court indicated that it disallowed Plaintiff's publication of the printout from the OSHA website to the jury because it was not relevant: "The statements appearing on that website were made in 2018. They do not reflect the standards that existed when Mr. Schrader worked with Bondstrand 4000 in the 1970s and 1980s." Trial Court Opinion, 2/27/19, at 13.

Plaintiff avers that, at trial, the trial court did not offer as the basis of its ruling the fact that the statements in question significantly post-dated the time of Mr. Schrader's exposure, and that, if it had, Plaintiff "could have proffered identical pronouncements made by OSHA during the relevant period of Mr. Schrader's employment at DuPont (1966-2001)." Plaintiff's brief at 49 n.5. We are unable to confirm the accuracy of Plaintiff's representation, as the discussion concerning Ameron's objection was held off the record. *See* N.T. Trial, 3/22/18, at 123. In any event, we may affirm the trial court's ruling on any basis apparent from the record. *See*, *e.g.*, *Preferred Contractors Ins. Co., RRG, LLC v. Sherman*, 193 A.3d 1009, 1022 n.3 (Pa.Super. 2018).

Our review of Ms. McCluskey's testimony on direct examination reveals no instance in which she testified that there was such a thing as a safe level of asbestos exposure, or that exposures below a certain threshold are incapable of causing asbestos disease. Rather, Ms. McCloskey discussed the

OSHA regulations applicable at the time Mr. Schrader worked with Bondstrand 4000, applied air sampling studies to the work Mr. Schrader described having performed with the pipe, and calculated his exposures from Bondstrand to be substantially below the exposures allowable under the OSHA regulations in place at the time. *See* N.T. Trial, 3/22/18, at 30-47. As such, the document in question did not, as Plaintiff contends, contradict Ms. McCloskey's testimony.

While Ms. McCloskey offered an opinion that Mr. Schrader's asbestos exposure from his work with Bondstrand did not increase the risk of developing mesothelioma because the exposures were not above background, she fully admitted upon questioning by Plaintiff's counsel that she was not a medical doctor and had no ability to offer opinions about causes of mesothelioma in general, or the cause of Mr. Schrader's mesothelioma in particular. *See id*. at 55, 58-59. Accordingly, the trial court did not err in declining to allow Plaintiff to introduce hearsay statements about disease **causation** that were offered under the guise of impeaching an industrial hygienist's testimony quantifying exposure and placing it in the context of the then-applicable regulations and epidemiological studies. No relief is due.

Plaintiff's penultimate claim of error involves the trial court's refusal to allow the jury to review during its deliberations an exhibit that had been duly admitted into evidence. Our review is guided by the following principles. "'The general rule in Pennsylvania is that exhibits properly admitted into evidence,

with the exception of depositions and transcripts of testimony, may, within the discretion of the trial court, be sent out with the jury.'" **Kearns v. Clark**, 493 A.2d 1358, 1362 (Pa.Super. 1985) (quoting **Wilson v. Pennsylvania Railroad Co.**, 219 A.2d 666, 673 n.8 (Pa. 1966)). **See also** Pa.R.C.P. 223.1(d)(3) (providing that the trial court **may** make exhibits available to the jury during deliberations).

> When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Linde v. Linde**, 220 A.3d 1119, 1150 (Pa.Super. 2019) (internal quotation marks omitted). Stated differently, "[j]udicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason." **Kline v. Travelers Pers. Sec. Ins. Co.**, ___ A.3d ___ , 2019 WL 6110279 at *5 (Pa.Super. Nov. 18, 2019).

In the instant case, during deliberations, the jury posed the following question to the court: "could we please see the letter from Neil [sic] Lambly to Ameron advising his recommendations regarding asbestos fibers, Exhibit P-17[?]" N.T. Trial, 3/23/18, at 126. The trial court elicited the parties' input

- 15 -

on how to answer the question.  Plaintiff, noting the specificity of the jury's request, opined that "[o]bviously they believe it will assist them in their deliberations." *Id*. at 127.  Accordingly, Plaintiff suggested "that the Lambly document go out to the jury." *Id*.  Ameron, observing that the jury "sat here for ten days," requested "that they rely on their recollection so we don't go down this path of giving exhibits.  Because if we give them one, we might be here all day giving out exhibits." *Id*.

The trial court's ruling was as follows:

> I'm inclined to agree with defense on this matter.  When we spoke anticipatorily about the way in which the [c]ourt handles evidence, I indicated this was always my preference, to say you must rely on your own recollection, and I'm inclined to do that, so if there's an objection, I'm sure it will be put on the record.

*Id*.[1]  Plaintiff objected, and the court instructed the jury to rely upon their recollection. *Id*. at 127-28.

In her post-trial motion following the jury's finding that Ameron exposed Mr. Schrader to asbestos but was not negligent, Plaintiff made the same arguments she offers to this Court.  First, Plaintiff noted that, in hindsight, there is some ambiguity as to which document the jury actually requested.  Although they specified a recommendation letter authored by Neal Lambly,

---

[1] The only prior mention in the trial transcripts of the trial court's plan for handling exhibits was an indication when Plaintiff moved her exhibits into evidence that "it's generally the policy of this court to send minimal materials back to the jury[.]"  N.T. Trial, 3/20/18, at 16 (unnecessary capitalization omitted).

they referenced Exhibit P-17, which was a 1972 report authored by Mr. Spielman concerning implementing monitoring of employees at Ameron's manufacturing plant. **See** Plaintiff's brief at 36-38. In either case, Plaintiff argued, "the requested exhibit was directly relevant to the issue of Ameron's knowledge of hazards associated with asbestos, the duty that Ameron owed the end users of its asbestos-containing Bondstrand pipe such as Ernest Schrader, Ameron's breach of that duty, and, ultimately, the issue of Ameron's negligence." **Id**. at 38.

Plaintiff maintains that the trial court abused its discretion by (1) neglecting to ascertain which document it was that the jury requested; and (2) failing to make any analysis of the probative value of the evidence versus potential for prejudice; but instead (3) blindly adhering to a blanket policy against providing exhibits to the jury, even when one is directly requested. **Id**. at 41.

In its opinion, the trial court spoke only to Plaintiff's Exhibit 17, and completely ignored Plaintiff's contention that the Lambly letter was the document actually requested. In its entirety, the trial court's response to Plaintiff's claim of error is as follows:

> In this case, the jury made a request to see Plaintiff's Exhibit P17, which is a report written by [Mr.] Spielman titled "Air Sampling for Asbestos."[1] [Ameron]'s corporate designee, Ralph Friedrich ("Friedrich") testified that the report was "probably" one of [Mr.] Spielman's first surveys of [Ameron]'s plant in Brea, California and its purpose was to advise whether [Ameron] was in compliance with OSHA regulations and to make recommendations. In response to the request, the [c]ourt

- 17 -

advised jurors to rely on their own recollection of the testimony. The exhibit in question had previously been published to the jury and testimony regarding the exhibit had been elicited. The jury's recollection of the exhibit and related testimony should be controlling. Plaintiff was not prejudiced by the trial court's decision to preclude the jury from viewing the exhibit during deliberations.

It was not an abuse of the [c]ourt's discretion to refuse to allow certain documents to be taken into the deliberating room during the jury's deliberations.

_____

[1] Plaintiff's Exhibit P17 is a Report issued by Health Science Associates titled "Air Sampling for Asbestos." The report, dated May 5, 1972, was written by Howard Spielman, CIH, CSP.

Trial Court Opinion, 2/27/19, at 11-12 (citations omitted).

In its brief, Ameron attempts to fill in the gaps in the trial court's analysis. Ameron contends that, in contrast to the initial decision whether to admit evidence, there is no requirement that a court weigh probative value versus prejudicial effect in deciding whether to provide exhibits to the jury. Ameron's brief at 41. Ameron further suggests that the trial court did not merely rely upon its preference to keep exhibits out of the jury room, as it entertained argument on the issue from the parties before deciding how to respond to the jury's request. *Id*. at 42. Ameron posits that if this Court should rule in favor of Plaintiff on this claim, it "would effectively establish a rule that a trial court must provide an exhibit whenever requested by the jury[.]" *Id*. Finally, Ameron argues that even if the trial court abused its discretion, Plaintiff was not prejudiced because "the exhibit in question had

been previously published to the jury and testimony regarding the exhibit had been elicited."[2]  *Id*.

Upon thorough review of the record, and in light of the specific facts and posture of this case, we are compelled to conclude that the trial court's ruling resulted from an abuse of discretion.  First, it does not appear to us that there is any real question that the document the jury wished to see was not Exhibit P-17 (the 1972 Spielman study), but rather "the letter from Neil [sic] Lambly to Ameron advising his recommendations regarding asbestos fibers."  N.T. Trial, 3/23/18, at 126 (quoting the jury's question).  Plaintiff had specifically highlighted Mr. Lambly's evidence during closing arguments as indicative of Ameron's negligence.  *See id*. at 34-38.  Indeed, while arguing that the jury's request should be granted, Plaintiff asked that "the Lambly document go out to the jury."  *Id*. at 127.  Given the specificity of the jury's description of the contents of the document, and the fact that only Neal Lambly's letter was mentioned in connection with the trial court's ruling, it is unreasonable for the trial court to advocate for this Court's affirmance based upon a mistaken exhibit number.

Second, in arguing against providing the jury with one specific document that it desired to see in furtherance of its deliberations, Ameron did not

---

[2] Ameron does not address the potential ambiguity about which exhibit the jury requested.  However, its arguments hold true for both possibilities, as both the Lambly letter and the Spielman study were published to the jury with corresponding testimony.

complain that it would be unduly prejudicial to its case, or that other documents must accompany it to balance out the impact of the exhibit. Instead, it complained only that it might make the deliberations last longer. *See id*. Since this argument supported its general preference, the trial court chose to adopt Ameron's position. *See id*.

We adopt no blanket rule concerning a jury's request to review an exhibit during deliberations. Rather, we hold that, in the face of a very specific request from the jury charged with resolving these very serious and complicated issues after ten days of trial, the trial court's decision to deny them access to one piece of duly-admitted evidence that it deemed important to its verdict, based solely upon speculation that it could inspire them to ask for more exhibits and prolong resolution of the case, amounts to a manifestly unreasonable exercise of discretion.

Further, we cannot conclude that the error was harmless. "A party suffers prejudice when the trial court's error could have affected the verdict." *Schuenemann*, *supra* at 101. As discussed above in detail, the jury ultimately found that Mr. Schrader's mesothelioma was caused by his asbestos exposure, and that exposure resulted in part from Ameron's product. However, while it decided that the settled defendants, who were not there to put on a defense concerning the reasonableness of their decisions, acted negligently in exposing Mr. Schrader to asbestos, it found that Ameron was not negligent. The Lambly letter that they had wished to consider prior to

absolving Ameron of liability spoke directly to the issue of whether Ameron was adequately informing end users about how to protect themselves. It is possible that the jury may have reached a different verdict had it been permitted to review an Ameron employee's suggestion that Ameron take greater steps to inform workers such as Mr. Schrader about proper safety precautions, rather than remaining silent while Mr. Schrader continued to saw and sand the asbestos-containing Bondstrand.

Therefore, we hold that the trial court abused its discretion in denying the jury's very specific request to view a certain piece of evidence without conducting any analysis of its import or offering any reasonable basis for its ruling. Mere reliance upon the court's general preference that jurors depend upon their memories and Ameron's speculation that jury deliberations may be protracted was unreasonable under these circumstances. Further, because the verdict may have been affected, we hold that the trial court's ruling amounts to reversible error warranting a new trial.

With her final argument, Plaintiff contends that the trial court committed "a prejudicial error of law" by allowing Ameron to pursue cross-claims against Armstrong and Lawrence by introducing evidence against them and including them on the verdict slip. Plaintiff's brief at 51. Plaintiff maintains that those

claims are barred under Delaware law[3] pursuant to the bare metal defense.[4] *Id*. at 53-56.

Ameron argues that it is not clear that the bare metals defense applies in Delaware. Ameron's brief at 46. Further, Ameron indicates that, even among the trial court decisions relied upon by Plaintiff, it is "an open question" whether the defense would apply where, as in the instant case, the manufacturer specified the use of asbestos-containing preplacement components. *Id*. at 47.

The trial court did not address the legal issue in its opinion. Instead, it opined that, even if it did err, the error was harmless. Specifically, the trial court noted that because the jury's determination that Ameron was not negligent obviated the need to apportion liability among the defendants, Plaintiff suffered no prejudice from the inclusion of Armstrong and Lawrence on the verdict slip. *See* Trial Court Opinion, 2/27/19, at 14.

The trial court is correct that any error in this regard was harmless. Plaintiff did not face any reduction in her recovery based upon the inclusion of the pump manufacturers on the verdict slip. Further, Plaintiff does not dispute

_____

[3] As there is no suggestion by either party in this Court that Delaware law does not govern this issue, we accept its application without question or examination of whether it conflicts with Pennsylvania law.

[4] The bare metal defense provides that manufacturers are not "liable for harms caused by later-added third-party parts." *Air & Liquid Sys. Corp. v. DeVries*, 139 S.Ct. 986, 992 (2019).

that the other settled defendants were properly included on the verdict slip, and the quality and quantity of evidence offered against those entities was not distinguishable from that against the pump manufacturers. As such, Plaintiff was not prejudiced by the inclusion of the two defendants in question. However, because we have ruled that Plaintiff is entitled to a new trial, we shall address the propriety of inclusion of the pump manufacturers in the case upon retrial.

Plaintiff offers no binding authority to support her contention that Delaware law bars Ameron from pursuing cross-claims against Armstrong and Lawrence. Instead, she cites several unpublished decisions in which the court held that a manufacturer has no duty to warn about hazards associated with component parts manufactured by third parties. **See** Plaintiff's brief at 54-55 (citing cases). However, Ameron contends that "it is an open question whether, under Delaware law, the bare metal defense would apply where the manufacturer specifies the use of asbestos-containing replacement parts." Ameron's brief at 47.

Our research reveals no authoritative pronouncement from a Delaware appellate court one way or the other. Rather, the Delaware Supreme Court recently was presented with the issue, acknowledged that other states have come down on both sides of the question, but ultimately decided the case on other grounds. **See Walls v. Ford Motor Co.**, 160 A.3d 1135 (Del. 2017) (unpublished disposition at 2017 WL 1422626 *3). In **Walls**, the decedent

was exposed to asbestos from, among other sources, brake changes performed on Ford vehicles in the course of the decedent's employment, as well as on his wife's personal Ford vehicle. The lower court applied the bare metal defense to hold that Ford was liable only for harm caused by brakes it supplied, and not replacement brakes supplied by third parties. *See id*. (2017 WL 1422626 at *1. The case went to trial against Ford solely as to the decedent's exposure to Ford original or replacement brakes, and the jury rendered a defense verdict.

In considering the plaintiff's appeal, the Delaware High Court noted decisions from Oregon and Maryland, as well as from a Pennsylvania federal district court, in which the courts held that the foreseeability of an end-user's exposure to asbestos from replacing asbestos-containing wearable components of equipment such as pumps and automobiles created a jury question as to the negligence of the equipment manufacturer. *See id*., (2017 WL 1422626 *3 n.9) (citing cases). The Court also noted decisions from Alabama and North Carolina providing that a manufacturer has no duty to warn as to third-party replacement parts used in connection with its product.[5]

_____

[5] Some of the cases cited by the Delaware Supreme Court on both sides of the issue were subsequently abrogated by the United States Supreme Court's decision concerning the bare metal defense in the context of maritime law in *Air & Liquid Sys. Corp. v. DeVries*, 139 S.Ct. 986 (2019). In that case, the Court rejected both the plaintiff-friendly position that a manufacturer may be liable if it is foreseeable that exposure to third-party asbestos may result, and the defense-oriented rule that a manufacturer can never be liable for harm

*See id*. (2017 WL 1422626 *3 n.10) (citing cases). However, because the jury found that Ford was not negligent for failing to warn the decedent about the dangers associated with its own original and replacement brakes, any error in the lower court's ruling that Ford had no duty to warn about third-party replacement brakes was harmless.

In the instant case, Mr. Schrader testified that he inhaled dust from asbestos-containing packing and gaskets used with Armstrong and Lawrence pumps. *See* Plaintiff's Exhibit 7 (Transcript of Videotaped Deposition of Mr. Schrader) at 75, 112-13. He used asbestos parts with the Armstrong and Lawrence pumps because that is what Armstrong and Lawrence indicated in the specifications for their product. *See id*. at 76-80, 113-14. Mr. Schrader never saw a warning about asbestos hazards on any of the pumps he worked with or in their specifications. *See id*. at 12-13. Further, as discussed above, Plaintiff presented evidence to establish that the hazards of asbestos exposure should have been known to the pump manufacturers years before Mr. Schrader worked with their products.

---

caused by a component that it did not make, sell, or distribute. *See id*. at 993. Instead, it adopted a middle ground, holding that:

> a manufacturer does have a duty to warn when its product **requires** incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses . . . even when the manufacturer does not itself incorporate the required part into the product.

*Id*. at 993-94 (emphasis in original).

Given this record, and state of Delaware law discussed above, we cannot conclude that it is legally improper to allow Ameron to pursue its cross-claims against Armstrong and Lawrence when this case is retried. The evidence suggests that those manufacturers did not merely supply bare metal products which might expose their users to asbestos manufactured or supplied by a third party, but rather took affirmative steps to ensure that asbestos would be used in maintaining the pumps. We see no reason to conclude that Delaware law necessarily bars a negligence claim under these circumstances.[6] Therefore, it is appropriate in the new trial of this matter conducted upon remand to allow Ameron to attempt to prove that Plaintiff's injuries resulted from the negligence of Armstrong and Lawrence.

In summary, Plaintiff failed to convince us that the trial court's rulings on Plaintiff's weight-of-the-evidence claim or the evidentiary issues that she argues on appeal warranted a new trial. However, we conclude that the trial court committed an abuse of discretion that may have affected the verdict in refusing to allow the jury to review a requested exhibit, for no stated reason beyond its general preference not to allow exhibits to go out with the jury and Ameron's concern that it might cause them to "be here all day." N.T. Trial, 3/23/18, at 127. Therefore, we remand for a new trial, at which Ameron may

---

[6] Presumably that is why these pump defendants settled with Plaintiff while their motions for summary judgment concerning the bare metals defense were pending before the trial court despite the fact that other bare metal defendants prevailed on that basis at summary judgment. *See* Plaintiff's brief at 12.

- 26 -

again seek to persuade the jury that the negligence of the four settled defendants contributed to Mr. Schrader's asbestos exposure.

Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/24/2020