# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 19, 2020 Session

## CAROLYN COFFMAN ET AL. v. ARMSTRONG INTERNATIONAL, INC. ET AL.

**Appeal by Permission from the Court of Appeals
Circuit Court for Knox County
No. 2-485-14    William T. Ailor, Judge**

_____

**No. E2017-01985-SC-R11-CV**
_____

SHARON G. LEE, J., dissenting.

In late 2014 Carolyn Coffman's husband, Donald Coffman, was diagnosed with lethal malignant pleural mesothelioma, a virulent cancer of the thin membrane that lines the lungs and chest, caused by exposure to asbestos fibers.[1] He died three months later. Mr. Coffman had been exposed to asbestos while working as a mechanic at the Tennessee Eastman Chemical plant in Kingsport. The Defendants, who manufactured the valves, gaskets, and other items that Mr. Coffman worked around, did not warn him that asbestos products had been added to the Defendants' manufactured products after being sold. The Defendants also did not warn Mr. Coffman that exposure to these asbestos-containing products could cause him to develop mesothelioma. Based on the evidence Mrs. Coffman submitted on summary judgment, the Defendants knew or should have known that asbestos-containing products would have to be added to their equipment after the sale to make the equipment usable, yet the Defendants did not warn Mr. Coffman of the danger. Thus, the question before the Court is whether the Defendants had a duty to warn that the products they manufactured and sold were unreasonably dangerous when the Defendants knew or should have known that their products required post-sale integration of an asbestos-containing component to work properly.

This is an issue of first impression in Tennessee. The majority adopts a no-duty-to-warn rule, holding that the manufacturers had no duty to warn of dangers from exposure to asbestos-containing products added post-sale by someone other than the

---

[1] *See Potts v. Celotex Corp.*, 796 S.W.2d 678, 679 (Tenn. 1990) (distinguishing mesothelioma from other diseases caused by asbestos exposure).

manufacturers.[2] This holding undercuts the duty to warn in Tennessee products liability law, because even if a manufacturer *knows* that its product will have to undergo some future change or replacement, and *knows* the change or replacement will likely make the product unreasonably dangerous, the manufacturer has no duty to warn. A better interpretation of the language of the Tennessee Products Liability Act, Tennessee Code Annotated sections 29-28-101 to 108 (2012) ("the Act"), is that a manufacturer[3] of a product has a duty to warn when the manufacturer (1) knows or should know that its product requires aftermarket integration with another product, such as a replaceable component part, to function properly; and (2) knows or should know that this aftermarket integration will likely render the final integrated product unreasonably dangerous.

The Defendants admit that they could be liable for Mr. Coffman's death if he was exposed to asbestos-containing products that they made or sold. *See Coffman v. Armstrong Int'l, Inc.*, No. E2017-01985-COA-R3-CV, 2019 WL 3287067, at *12 (Tenn. Ct. App. July 22, 2019), *perm. app. granted*, (Tenn. Feb. 20, 2020). Yet, the Defendants take no responsibility for any asbestos-containing products that they knew or should have known would have to be added to their equipment to make it work properly.

Under Tennessee law, "a manufacturer may be held strictly liable for failing to warn consumers of the dangers of a particular product at the time of sale." *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 693 (Tenn. 2011) (quoting *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 541 (Tenn. 2008)).[4] These claims center on particularized and highly fact-bound inquiries. We view both "the unreasonable dangerousness of a product" and "a lack of warnings about a dangerous product that can serve as a basis for a manufacturer's liability" as "usually jury questions." *Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287, 1297 (M.D. Tenn. 1992) (applying Tennessee law). "It is ordinarily a question for the trier of fact whether the product is in a defective condition unreasonably dangerous to the user," which in turn depends in part on "the presence or absence of a statement accompanying the product which in some way informs the user of the danger." *Id.* (quoting *Young v. Reliance Elec. Co.*, 584 S.W.2d 663, 668 (Tenn. Ct. App. 1979)). The Defendants argue a jury need not hear this case because the unreasonably dangerous products simply *were not theirs*, and so the Defendants had no duty to warn about them.

---

[2] Courts have referred to this rule as the "bare-metal defense," in that the defendant denies liability because the product it made or sold contained no asbestos; *i.e.*, the product had nothing more than bare metal. *See, e.g.*, *Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 991–93 (2019); *see also Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2016 WL 5780104, at *2 n.7 (E.D. La. Oct. 4, 2016) (suggesting "that a better name for the argument might be the 'not my asbestos defense'").

[3] This standard also applies to a seller of a product.

[4] *See also* Tenn. Code Ann. § 29-28-102(6) (2012) (recognizing "actions based upon . . . breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent" as "[p]roduct liability action[s]").

2

To decide whether the Defendants had a duty to warn, we turn to the text of the Act. Our proper "role . . . is to assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute." *State v. Gibson*, 506 S.W.3d 450, 455 (Tenn. 2016). We begin with section -105(a):

> A manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably *dangerous at the time it left the control of the manufacturer or seller.*

Tenn. Code Ann. § 29-28-105(a) (2012) (emphasis added).

Placing a duty to warn on the Defendants follows from section -105(a). When a manufacturer knows or should know that its product requires an aftermarket integration, and the manufacturer knows or should know that the integrated product will be unreasonably dangerous, but fails to warn of the danger, that knowledge makes all the difference. Because of that knowledge (or, when the manufacturer should know, which is foreseeability), the failure to warn occurs *while the product is still within the manufacturer's control*. And it is because of the manufacturer's failure to warn that the product is unreasonably dangerous. In other words, for a failure to warn claim under the Act, what matters is a manufacturer's knowledge about the likely dangers once the product passes out of its hands—not whether someone else happens to bring the known danger about. The emphasized text in section -105(a) reflects a core legal principle—fusing together sellers' and manufacturers' liability for a product with their causal responsibility for its condition. *See* Restatement (Second) of Torts § 402A (Am. L. Inst. 1965) (2020 Update). But that is not the end of the analysis.

We have to also consider other relevant provisions of the Act: section -105(d) and section -108. Under section -105(d), "[a] product is not unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is *apparent* to the ordinary user." Tenn. Code Ann. § 29-28-105(d) (emphasis added). Thus, it follows that a product is unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is *not* apparent to the ordinary user. *See, e.g.*, *Nye*, 347 S.W.3d at 693 (recognizing a claim for failure to warn of known risks of workplace asbestos exposure). What makes a product unreasonably dangerous, in at least some circumstances, is the failure to warn of a danger or defect that is not apparent at the time of sale but that the manufacturer knows (or has reason to know) is likely to come about.[5]

---

[5] Comment j of section 402A of the Second Restatement of Torts, which serves as the conceptual foundation of the Act, states that "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." Restatement (Second) of Torts § 402A cmt. j (Am. L. Inst. 1965).

Mrs. Coffman argues that the Defendants knew that their products required aftermarket integration with replaceable asbestos-containing components. The Defendants did not warn about the asbestos-containing components even though the Defendants knew that end users of their product would, by design and intent, be exposed to asbestos. This failure to warn of a dangerous product *itself* constitutes an unreasonable danger[6] and corresponds with a freestanding theory of liability. *See, e.g.*, *Nye*, 347 S.W.3d at 693 (noting the failure to warn as a distinct theory of products liability).

Next, we need to consider and apply section -108:

> If a product is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller *but was made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use*, the manufacturer or seller is not liable.

Tenn. Code Ann. § 29-28-108 (2012) (emphasis added).

Two related canons of construction provide guidance here. First, "a special provision of a particular statute[] will prevail over . . . a general provision in the same statute." *Keough v. State*, 356 S.W.3d 366, 371 (Tenn. 2011). Second, we "construe a statute so that no part will be inoperative, superfluous, void, or insignificant," giving full effect to legislative intent. *Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020) (quoting *City of Caryville v. Campbell Cnty.*, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983)). These two canons reinforce one another[7] in a way that this case illustrates. Here,

---

[6] Under Tennessee law, the duty to warn does not collapse into the unreasonably dangerous standard. As noted above, whether a product is unreasonably dangerous and the *distinct* question of whether the defendant has failed to warn of a danger depend on fact-bound and particularized findings and are best left to a jury. *See Harwell*, 803 F. Supp. at 1297 (interpreting Tennessee law). This conclusion fits the Act's definition of "unreasonably dangerous," which either "means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics," or that a reasonably prudent seller with full knowledge of the product's condition would not put it on the market. Tenn. Code Ann. § 29-28-102(8). The first prong, known as the consumer expectation test, draws heavily on the sort of community norms that inform a jury verdict.

[7] Compare Justice Scalia's unanimous opinion in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012), observing that "[t]he general/specific canon" can often reconcile contradictory provisions, where "the specific provision is construed as an exception to the general one." Giving priority to the specific provision over the general will also rescue its meaning from being negated as superfluous or irrelevant:

> [T]he canon has full application as well to statutes [where] a general authorization and a more limited, specific authorization exist side-by-side. There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general

4

the general provision is section -105(a), which lays out the broad standards for liability—when a product is in a defective condition or unreasonably dangerous. By contrast, section -108 provides for the specific instance of a safe product being altered after having left the manufacturer's control. The key language in section -108 is the text emphasized in the block quotation above: that a defendant is not liable when the product "was made unreasonably dangerous by subsequent *unforeseeable* alteration." Tenn. Code Ann. § 29-28-108 (emphasis added).

Limiting a manufacturer's liability to only apparent or extant defects in the product when it leaves the manufacturer's hands makes the key language in section -108 superfluous. We cannot ignore the phrase "subsequent unforeseeable alteration," which can only mean that a manufacturer will sometimes be liable for later alterations that are foreseeable. The common law of Tennessee and other jurisdictions can help us fill that gap.

This Court made the same interpretive inference about section -108 in *Davis v. Komatsu American Industries Corp.*, 42 S.W.3d 34 (Tenn. 2001). Answering a question certified by a federal court, we determined "that Tennessee law does support imposition of liability when a component manufacturer substantially participates in the integration of the non-defective component into the design of the final product, if the integration of the component causes the final product to be defective and if the resulting defect causes the harm." *Id.* at 42. Our reasoning depended in part on this "obvious converse implication of [Tennessee Code Annotated section -]108," *id.* at 43:

> [I]f a manufacturer is *not* liable for injuries when its non-defective, safe product is "made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use," as Section [-]108 provides, it is logical to conclude that liability is appropriate when a component manufacturer substantially participates in integrating its non-defective, safe component into the *design* of a final product, the integration causes the final product to be defective, and the resulting defect causes the harm.

*Id.* (footnote omitted). A similar inference applies in this case. At times, a manufacturer who is appropriately responsible for an aftermarket integration will also be liable for the harm it causes.

As the majority correctly notes, *Davis* involved a component part manufacturer, while the Defendants were the manufacturers of the base product. But, respectfully, this is a distinction without a difference. If section -108 immunizes a manufacturer *specifically*

one, "violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute."

*Id*. (alteration in original) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932)).

*when an alteration is unforeseeable*, it stands to reason that *both* the participating component manufacturer *and* the knowing base-product manufacturer should be liable when the alteration *is foreseeable*. So long as the base-product manufacturer knows that the aftermarket integration is required for the product to properly function and that the integrated product will be either defective or unreasonably dangerous, the same converse implication of section -108 applies to both. *See id.*

The majority relies on *Goode v. Tamko Asphalt Products, Inc.*, 783 S.W.2d 184 (Tenn. 1989). In *Goode*, this Court upheld a directed verdict for the defendant manufacturer because reasonable minds would agree that the plaintiff's evidence could not establish that the product was unreasonably dangerous. *Id.* at 187. In particular, the testimony of one of the plaintiff's expert witnesses established that the plaintiff "presented the only case in medical history, insofar as this record reveals, of a human being sustaining any skin problem or ill health of any nature from the use of asphalt roofing products," *id.*, and "the articles and data upon which [plaintiff's only other expert] relied are totally lacking in trustworthiness and without any indicia of reliability, as presented in this record." *Id.* at 188. That sort of record is a far cry from Mrs. Coffman's case, whose credible facts correspond with hundreds of other cases that plaintiffs have successfully litigated throughout the nation.

The majority quotes the following sentence from *Goode*, supplying the emphasis: "Thus, the issue is whether defendant's roofing products were in an unreasonably dangerous condition *at the time the products left the control of each manufacturer*." *Id.* at 187. But a full reading of *Goode* suggests that it is the *first part* of that sentence that decides the case. Nothing in the *Goode* court's reasoning to support its decision in favor of one party instead of the other—the opinion's holding and precedential legal force[8]—depends on whether the product was in an unreasonably dangerous condition at any particular time. Instead, the operative question is whether the product was unreasonably dangerous *at all*. By contrast, Mrs. Coffman's claims present genuine issues of material fact that are best left for a jury to decide.

---

[8] For one gloss of the distinction between dictum and holding, see Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1256 (2006). Judge Leval writes:

> If the court's judgment and the reasoning which supports it would remain unchanged, regardless of the proposition in question, that proposition plays no role in explaining why the judgment goes for the winner. It is superfluous to the decision and is dictum. The dictum consists essentially of a comment on how the court would decide some other, different case, and has no effect on its decision of the case before it.

Simply declaring *Goode* to have depended on the timing question is no cure. "A judge[] . . . cannot transmute dictum into decision by waving a wand and uttering the word 'hold.'" *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring).

Admittedly, the majority's no-duty-to-warn rule provides clarity and predictability. But we should be cautious of erecting absolute rules to bar products liability claims, which in their arc over the past century have slipped the formalistic bonds of privity of contract to ensure substantive justice. *See MacPherson v. Buick Motor Co.*, 111 N.E. 1050, 1053 (N.Y. 1916) ("We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."); *Howell v. Betts*, 362 S.W.2d 924, 925 (Tenn. 1962) (citing *Burkett v. Studebaker Bros. Mfg. Co.*, 150 S.W. 421 (Tenn. 1912)) ("It is true the old rule was that there was no duty of care upon a defendant to a plaintiff not in privity. But it can hardly be said that such a general rule any longer exists."); Restatement (Second) of Torts § 402A (Am. L. Inst. 1965).

The Defendants are concerned that requiring them to warn about foreseeable alterations that cause their products to become unreasonably dangerous will lead to "near limitless liability." This concern is unfounded. A manufacturer will not be liable for failing to warn of *any* alteration that makes a product unreasonably dangerous. Rather, a manufacturer will be responsible only for alterations that make a product unreasonably dangerous (*i.e.*, the addition of cancer-causing asbestos) that are *foreseeable* because the manufacturer knows or should know that the alterations are *required* to make the product function properly. A rule based on foreseeability is not open-ended. This Court recognized the importance and limits of foreseeability in *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366 (Tenn. 2008), noting that although foreseeability "is so important" that establishing it is necessary to establish a duty, "[c]onversely, foreseeability alone is insufficient to create a duty." The Supreme Court of the United States has recognized the same. In *Air & Liquid Systems Corp. v. DeVries*, 139 S. Ct. 986 (2019), the Court adopted a "third approach fall[ing] between" limitless foreseeability and a rigid rule:

> Under the third approach, foreseeability that the product may be used with another product or part that is likely to be dangerous is not enough to trigger a duty to warn. But a manufacturer does have a duty to warn when its product *requires* incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses. Under that approach, the manufacturer may be liable even when the manufacturer does not itself incorporate the required part into the product.

*Id.* at 993–94. The collective wisdom of the common law serves to guide us here, through the accreted experience of how other courts have decided similar questions. There are indeed principled limits to liability that still require defendants to be responsible for their conduct when in a position to prevent unreasonable danger to injured individuals.

The United States Supreme Court frames its case for the rule in *DeVries* as the moderate position navigating between two extremes that have percolated in the federal

circuits interpreting maritime law: the plaintiff-friendly "foreseeability" approach and the defendant-friendly "bare-metal" rule,[9] which is substantively similar to the no-duty-to-warn rule adopted by the majority today. Additionally, the *DeVries* Court grounds its middle-of-the-road approach as an application of the core principle that animates much of the doctrine of strict products liability: Judge Calabresi's notion that the party to best hold liable for an accident is the party in the position to avoid the accident most cheaply.[10] As the Court observes, a "product manufacturer knows the nature of the ultimate integrated product and is typically more aware of the risks associated with that integrated product." *DeVries*, 139 S. Ct. at 994. In cases like the one at hand, end users like Mr. Coffman would interact more often with the base-level equipment like the steam traps and valves than with replaceable parts containing asbestos, whose warnings a user might see once or not at all. The Supreme Court also wisely notes that the duty to warn is a fairly inexpensive duty to fulfill (as far as defendants' duties in tort go), even more so in that the *marginal* cost of an additional warning is slight. *Id.* at 994–95.

The majority dismisses *DeVries*, first, because its reasoning rests on "[m]aritime law's longstanding solicitude for sailors." *Id.* at 995. But the *DeVries* opinion never states that its decision depends on this distinction—only that this principle makes its rule "especially appropriate" in admiralty. *Id*. And in both the *DeVries* case and this case, deciding in favor of the plaintiffs is not giving out any special treatment. It is instead a matter of remedial justice under the law. The root-level case for this "solicitude" principle, *Moragne v. States Marine Lines, Inc*., 398 U.S. 375 (1970), makes that much clear. In *Moragne*, the Court held maritime law to have abandoned the old common law rule against a wrongful death action—as every common law jurisdiction has now done, whether by doctrine or statute. *Id.* at 388–90. In the wind-up before delivering its doctrinal analysis, the *Moragne* Court noted that because of this solicitude "there might have been no anomaly in adoption of a different rule to govern maritime relations, and that the common-law rule, criticized as unjust in its own domain, might wisely have been rejected as incompatible with the law of the sea." *Id.* at 387. But the Court then decided that "the rule against recovery for wrongful death is sharply out of keeping with the policies of modern American maritime law" given "the wholesale abandonment of the rule in most of the area where it

---

[9] In particular, the *DeVries* Court affirms the approach in *Quirin v. Lorillard Tobacco Co*., 17 F. Supp. 3d 760, 769–70 (N.D. Ill. 2014); *In re New York City Asbestos Litigation*, 59 N.E.3d 458, 474 (N.Y. 2016); and *May v. Air & Liquid Systems Corp.*, 129 A.3d 984, 1000 (Md. 2015). Many cases that the Defendants invoke in support of the bare-metal rule depend on maritime law and were abrogated by *DeVries*. These include: *Cabasug v. Crane Co.*, 989 F. Supp. 2d 1027 (D. Haw. 2013); *Lindstrom v. A-C Prods. Liability Trust*, 424 F.3d 488 (6th Cir. 2005); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791 (E.D. Pa. 2012); and *Evans v. CBS Corp.*, 230 F. Supp. 3d 397 (D. Del. 2017).

[10] "A pure market approach to primary accident cost avoidance would require allocation of accident costs to those acts or activities (or combinations of them) which could avoid the accident costs most cheaply." Guido Calabresi, The Costs of Accidents: A Legal and Economic Analysis 135 (1970). Placing liability on the least-costly avoider is economically efficient because it causes the parties to a transaction to fully internalize the costs of their choices while using the fewest resources possible.

once held sway, quite evidently prompted by the same sense of the rule's injustice that generated so much criticism of its original promulgation." *Id.* at 388. In *DeVries* and *Moragne*, the solicitude principle brings maritime law into harmony with the common law by removing formalistic barriers to substantive justice. Special solicitude for sailors is not the basis for the analysis.

The second argument the majority gives for casting *DeVries*—and the gravitational pull of all of admiralty law—aside is that the Supreme Court does not set out to interpret the text of Tennessee's Act. And fair enough. Yet, we still have good reason to pay attention to the Supreme Court. That is because the same general body of legal principles informs maritime law, the common law, and even the best construction of a Tennessee statute. Holding a manufacturer responsible for failing to warn of an unreasonable danger that it knows or should know of related to an aftermarket integration that it knows or should know is required for the product to function stems from those principles and follows from the language of the Act. When a defendant knows that an aftermarket integration is both necessary and likely to be unreasonably dangerous, the failure to warn of that danger is a choice—one that the manufacturer makes *before* the product leaves its control. Tenn. Code Ann. § 29-28-105(a). As the law of products liability regards the manufacturer, that choice is what makes the product "unreasonably dangerous." *Id.*

Besides the United States Supreme Court, many state jurisdictions have considered whether to endorse a standard adopting foreseeability based on what the product requires or reject the bare-metal rule similar to what the majority here embraces. As a New Jersey appellate court recently observed, there is a "recent trend . . . towards the imposition of liability on manufacturers even where the worker's exposure was to replacement parts, where the original product was manufactured with asbestos-containing parts." *Whelan v. Armstrong Int'l Inc.*, 190 A.3d 1090, 1108 (N.J. Super. Ct. App. Div. 2018). *See In re N.Y.C. Asbestos Litig.*, 59 N.E.3d 458, 463 (N.Y. 2016) (recognizing a manufacturer's "duty to warn of the danger arising from the known and reasonably foreseeable use of its product in combination with a third-party product which, as a matter of design, mechanics or economic necessity, is necessary to enable the manufacturer's product to function as intended"); *May v. Air & Liquid Sys., Corp.*, 129 A.3d 984, 994 (Md. 2015) ("[T]he duty to warn . . . exists . . . when . . . a manufacturer's product contains asbestos components, and no safer material is available; asbestos is a critical part of the pump sold by the manufacturer; periodic maintenance involving handling asbestos gaskets and packing is required; and the manufacturer knows or should know of the risks from exposure to asbestos.") (numbers omitted); *Schwartz v. Abex Corp.*, 106 F. Supp. 3d 626, 664 (E.D. Pa. 2015) ("[U]nder Pennsylvania law, a manufacturer . . . has a duty . . . to warn of the asbestos hazards of such aftermarket component parts if it (a) knew that an asbestos-containing component part of that type would be used with its product, and (b) knew (at the time it placed its product into the stream of commerce) that there were hazards associated with asbestos."); *Poage v. Crane Co.*, 523 S.W.3d 496, 514 (Mo. Ct. App. 2017) ("[T]he seller of a valve that . . . required replacement asbestos-containing gaskets and packing, . . .

[owes] its consumers . . . [a duty to warn] . . . ."); *Sweredoski v. Alfa Laval, Inc.*, No. PC-2011-1544, 2013 WL 5778533, at *5 (R.I. Super. Ct. Oct. 21, 2013) ("Crane may be held liable for failing to warn Sweredoski of the dangers of replacing old packing and gaskets with new asbestos-containing parts."); *McKenzie v. A.W. Chesterson Co.*, 373 P.3d 150, 160–62 (Or. Ct. App. 2016), *abrogated by DeVries*, 139 S.Ct. 986 (recognizing liability for failure to warn of foreseeable asbestos risk from working on or near pumps made and sold by defendant that were integrated with asbestos-containing replaceable parts); *Whelan,* 190 A.3d 1090 (denying summary judgment where equipment defendants failed to warn under similar circumstances). *But see O'Neil v. Crane Co.*, 266 P.3d 987, 991 (Cal. 2012) ("[A] product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products."); *Simonetta v. Viad Corp.*, 197 P.3d 127 (Wash. 2008), *superseded by statute*, Wash. Prod. Liab. Act, Wash. Rev. Code Ann. § 7.72, *as recognized in Dawood v. Mercedes-Benz USA, LLC*, No. 3:14-cv-05179-RBL, 2016 WL 3960029 (W.D. Wash. July 22, 2016); *Braaten v. Saberhagen Holdings,* 198 P.3d 493, 503–04 (Wash. 2008); *Davis v. John Crane, Inc.*, 836 S.E.2d 577, 583–84 (Ga. Ct. App. 2019), *reconsideration denied* (Nov. 15, 2019), *cert. denied* (Ga. Aug. 10, 2020), *reconsideration of denial of cert. denied* (Ga. Sept. 8, 2020); *Morgan v. Bill Vann Co.*, 969 F.Supp.2d 1358, 1367–68 (S.D. Ala. 2013).

These cases are not irrelevant because they do not interpret Tennessee's Act. Those states would have had *no* reason to interpret our Act. While some states—New York, Maryland, and Pennsylvania, to name a few—do not have products liability statutes, it is not clear why the common law reasoning of their courts should not affect the shared legal principles that also course through our own statute. Given that the Act reflects section 402A of the Restatement (Second) of Torts, an effort to distill the common law at a particular moment in time, it seems as though the parallel developments in other states since then would have some considerable significance in understanding it today. And many of those states whose products liability statutes *do* have language tracking basic concepts in section 402A of the Restatement (Second) of Torts have embraced the standard proposed by this dissent. Missouri, for example, also pulls its "unreasonably dangerous" standard directly from the Second Restatement. *See Poage*, 523 S.W.3d at 514 ("Crane owed its consumers . . . a duty to refrain from producing 'unreasonably dangerous' products . . . . A product may inherently be 'unreasonably dangerous' due to its 'defective condition' or characterized as 'unreasonably dangerous' due to the absence of an appropriate warning." (citations omitted)). So too with Rhode Island. *See Sweredoski*, 2013 WL 5778533, at *5 ("[T]he pivotal issue under Rhode Island law is whether Crane intended the asbestos in its valves to be replaced with new asbestos and whether Crane had 'reason to anticipate that danger may result from [that] particular use.'" (alteration in original) (quoting Restatement (Second) Torts § 402A cmt. h) (citing *Ritter v. Narragansett Elec. Co.*, 283 A.2d 255, 262 (R.I. 1971)).

Other states, such as Oregon, have rejected the majority's approach. *See McKenzie*, 373 P.3d at 160–62. There are considerable similarities between Tennessee's Act and the Oregon statute. *See* Or. Rev. St. § 30.920 (West, Westlaw through laws enacted during 2020 Reg. Sess., First Spec. Sess., and the Second Spec. Sess. of the 80th Legis. Assemb.) (creating liability for selling or leasing "any product in a defective condition unreasonably dangerous to the user or consumer" where "[t]he seller or lessor is engaged in the business of selling or leasing such a product; and . . . [t]he product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased"); *see also id*. § 30.915 (West, Westlaw through laws enacted during 2020 Reg. Sess., First Spec. Sess., and the Second Spec. Sess. of the 80th Legis. Assemb.) ("It shall be a defense to a product liability civil action that an alteration or modification of a product occurred under the following circumstances: . . . (3) If the alteration or modification was reasonably foreseeable, the manufacturer, distributor, seller or lessor gave adequate warning.").

Additionally, most of the other states with cases endorsing the bare-metal rule do not adopt a rule that sweeps as broadly as the no-duty-to-warn rule adopted by the majority. In particular, even these states allow for liability where plaintiffs present evidence that defendant manufacturers knew or intended that the asbestos-containing components would be integrated with their products. *See O'Neil*, 266 P.3d 987. There, the California high court limited the manufacturers' duty to "warn about potential hazards in replacement parts made by others *when, as here, the dangerous feature of these parts was not integral to the product's design*." *Id.* at 991 (emphasis added). But where "the defendant's product was intended to be used with another product *for the very activity that created a hazardous situation* . . . it is reasonable to expect the manufacturer to give warnings." *Id*. at 1004. The California court found it significant that "there was no evidence that defendants' products *required* asbestos-containing gaskets or packing in order to function. Plaintiffs' assertion to the contrary is belied by evidence that defendants made some pumps and valves without asbestos-containing parts." *Id.* at 996. But here, Mrs. Coffman met her burden of production, and we are bound at this stage to view the evidence in its most favorable light. The most recent case out of Washington State is even more evocative on this point, limiting two cases that had represented noteworthy high-water marks for the bare-metal rule.[11]

---

[11] The two cases most friendly to the bare-metal rule, *Simonetta v. Viad Corporation*, 197 P.3d 127 (Wash. 2008), and *Braaten v. Saberhagen Holdings, Inc.*, 198 P.3d 493 (Wash. 2008), have been undermined by *Macias v. Saberhagen Holdings, Inc*., 282 P.3d 1069, 1075–77 (Wash. 2012), which explains:

> [T]he general rule stated in *Simonetta* and *Braaten* is just this, a general rule to which there are exceptions.
>   . . . .
> [T]he products involved in the *Simonetta* and *Braaten* cases did not require that asbestos be used in conjunction with their products, nor were they specifically designed to be used with asbestos. Nor were those products designed as equipment that by its very nature would necessarily involve exposure to asbestos.
>   . . . .

The majority invokes Georgia law, but there is arguably a similar distinction to draw. In *Davis v. John Crane, Inc.*, 836 S.E.2d 577, 583 (Ga. Ct. App. 2019), *reconsideration denied* (Nov. 15, 2019), *cert. denied* (Ga. Aug. 10, 2020), *reconsideration of denial of cert. denied* (Ga. Sept. 8, 2020), the court noted that "although the pumps were designed with the knowledge that the packing would erode over time and would require replacement, the pumps could operate with packing made from materials other than asbestos, or could be modified in the field to require no packing at all." Mrs. Coffman presented evidence to the contrary.

Here, the majority and the dissent reach different conclusions about the meaning of the Act. Neither the majority nor the dissent attempts to make policy because that is the role of the Legislature. The Defendants admit that they sold the products that were later integrated with asbestos and to which Mr. Coffman became exposed. The question is whether the Defendants' products were unreasonably dangerous when they left the manufacturers' control. In the majority's view, they were not, because the Defendants *themselves* did not incorporate any asbestos into the product. In the dissent's view, the products were unreasonably dangerous, because the Defendants *knew that someone else would* incorporate asbestos into the product, yet the Defendants warned no one.

In sum, under the Tennessee Products Liability Act, a manufacturer of a product should have a duty to warn when the manufacturer (1) knows or should know that its product requires aftermarket integration with another product, such as a replaceable component part, to function properly; and (2) knows or should know that this aftermarket integration will likely render the final integrated product unreasonably dangerous.

Thus, I dissent from the majority's decision affirming the trial court's grant of summary judgment to the Defendants and would allow the jury to do its job.

_____
SHARON G. LEE, JUSTICE

---

*Simonetta* and *Braaten* do not control because unlike in those cases, where the manufacturers' products did not, in and of themselves, pose any *inherent* danger of exposure to asbestos, here when the products were used exactly as intended and cleaned for reuse exactly as intended . . . they *inherently* and invariably posed the danger of exposure to asbestos. Thus, the manufacturers of the respirators were not entitled to summary judgment on the issue of whether, under *Simonetta* and *Braaten*, they are proper defendants for purposes of the plaintiffs' failure to warn claims.